UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RESOURCE MANAGEMENT CONCEPTS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. SMALL BUSINESS ADMINISTRATION, *et al.,* <br><br> *Defendants.* | Case No. 1:20-cv-3416-RCL |

## MEMORANDUM ORDER

Plaintiff Resource Management Concepts filed the present lawsuit against the Small Business Administration ("SBA") and its Administrator to challenge SBA regulations that diminished the value of plaintiff's government contract. While this litigation was ongoing, the SBA issued a "correction" to the challenged regulatory framework. Plaintiff believes that this correction fixes the issue that formed the basis of its suit, so the case is now moot. But even though plaintiff started this fight, the SBA is determined to keep it going—it contends that this case is not moot because the challenged regulations still apply. The parties cross-moved for summary judgment. Upon consideration of the parties' filings, Pl.'s Mot. for Summary J. ("Pl.'s Mot."), ECF No. 13, Defs.' Cross Mot. for Summary J. ("Defs.' Mot."), ECF Nos. 16 & 17, Pl.'s Reply, ECF Nos. 22 & 23, Defs' Reply, ECF No. 28, applicable law, and the entire record herein, the Court will **DENY WITHOUT PREJUDICE** the parties' cross motions for summary judgment.

### I. BACKGROUND

#### A. Statutory And Regulatory Background

The Small Business Act, codified at 15 U.S.C. §§ 631–57, declares that "[i]t is the policy of the United States that small business concerns . . . shall have the maximum practicable

1

opportunity to participate in the performance of contracts let by any Federal agency." 15 U.S.C. § 637(d)(1). To further this policy goal, certain contracts are reserved, or "set aside," for small business concerns. *See id.* § 644. The Small Business Act also created the SBA to oversee Congress's policy objectives and furnished the SBA's Administrator with broad powers to "make such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to" the Small Business Act. *Id.* § 634(b)(6).

Of course, the first step in achieving the Small Business Act's policy objectives is to determine which businesses are "small." If a business wants to be eligible for government contracts reserved for small businesses, it must certify itself as a "small business concern," and qualify under the standards set forth by the Small Business Act and the SBA's regulations. *See, e.g., id.* § 632(a)(1); 13 C.F.R. § 121. The SBA has also enacted regulations that establish *when*— or at what point in time—a business must satisfy the relevant criteria to receive small business treatment. *See id.* § 121.404. These time-focused regulations are at issue in this case.

In 2010, Congress passed the Small Business Jobs Act, which required the SBA to issue regulatory guidance under which federal agencies may set aside orders for multiple-award contracts (or "MACs"). *See* 15 U.S.C. § 644(r). A MAC is a type of indefinite-quantity contract which is awarded to several contractors from a single solicitation. *See generally* 13 C.F.R. § 125.1. MAC awardees commonly compete for individual task orders involving the delivery of supplies or the performance of services. These task orders are placed against the MAC.

In 2013, the SBA promulgated its initial regulations for setting aside task and delivery orders under MACs. These regulations provided that business size would be determined "at the time of the initial offer submitted in response to the solicitation for the contract." 78 Fed. Reg. 61,114. The relevant initial regulations stated:

> SBA determines the size status of a concern, including its affiliates, as of the date the concern submits a written self-certification that it is small to the procuring activity, as part of its initial offer (or other formal response to a solicitation), which includes price.
>
>> (1) With respect to Multiple Award Contracts and orders issued against a Multiple Award Contract:
>>
>>> (i) [the Agency] determines size at the time of initial offer (or other formal response to solicitation), which includes price, for a Multiple Award Contract . . . [i]f a business is small at the time of offer for the Multiple Award Contract, *it is small for each order issued against the contract*, unless a contracting officer requests a new size certification in connection with a specific order.

13 C.F.R. § 121.404(a) (2014) (emphasis added); *see id.* § 121.404(g) (2014). Accordingly, if a business was certified as small at the time it submitted an offer for the MAC, it did not need to recertify its size status for task orders specifically set aside for small businesses under the same MAC, unless the federal contracting officer requested recertification.

In 2020, the SBA amended these regulations. The new rules (the "2020 Regulations") provide that for MACs that are open to businesses of all sizes ("unrestricted MACs") and that require price at the time of the initial offer, business size is determined at the time the business submits its proposal for each task order. *See* 13 C.F.R. § 121.404(a)(1)(i)(A), (a)(1)(ii)(A) (effective Nov. 16, 2020). Now, even if a business certified itself as small when it submitted a bid for the MAC, it must "recertify its size status and qualify as a small business at the time it submits its initial offer, which includes price, for the particular order." *Id.* § 121.404(a)(1)(i)(A), (a)(1)(ii)(A).

### B. Factual And Procedural Background

Plaintiff is the holder of a MAC known as Seaport-NxG, which was awarded on an unrestricted basis in January 2019. Kevin Cooley Decl. ("Cooley Decl.") ¶¶ 2, 6. Seaport NxG is

3

the Department of the Navy's "mandatory vehicle for procurement of professional services." *Id.* ¶ 2. Various agencies within the Navy contract their service requirements to the more than 1,870 Seaport-NxG firms. *Id.* When Plaintiff was awarded its Seaport-NxG contract, it qualified and was recognized as a small business. *Id.* ¶ 3. In anticipation of competing for the Seaport-NxG task orders set aside for small businesses, plaintiff invested between $1 and 1.5 million. *Id.* ¶ 5. By January 1, 2021, plaintiff outgrew its size status and could no longer qualify as a small business. *Id.* ¶ 3. Accordingly, plaintiff would no longer be able to compete for Seaport-NxG task orders that are set aside exclusively for small businesses.

On November 24, 2020, plaintiff sued the SBA and the Administrator. Compl., ECF No. 1. In the complaint, plaintiff contends that the SBA promulgated an unauthorized retroactive regulation and violated the Regulatory Flexibility Act. *Id.* ¶¶ 26–27, 33. Invoking the Administrative Procedure Act, plaintiff asks the Court to declare the 2020 Regulations unlawful and enjoin their application to task order competitions under previously awarded Seaport-NxG MAC contracts. *Id.* at 9, 11.

### C. The SBA's Regulatory "Correction"

During the parties' summary judgment briefing, the SBA issued, without notice and comment, what it described as a "correcting amendment" to 13 C.F.R. 121.404 (the "2021 correction"), where the 2020 Regulations are found. 86 Fed. Reg. 38357-02. The SBA explained that it when it passed the 2020 Regulations, it "inadvertently removed § 121.404(a)(1)(iv), which concerned when the size of a concern is determined for multiple-award contracts for which offerors are not required to submit price as part of the offer." *Id.* Thus, the regulation now also states:

> (iv) For an indefinite delivery, indefinite quantity (IDIQ), Multiple Award Contract, where concerns are not required to submit price as part of the offer for the IDIQ contract, size will be determined as of the date of initial offer, which may not include price.

4

13 C.F.R. § 121.404(a)(1)(iv).

Plaintiff contends that that the 2021 correction "qualifies" all the preceding language, so that "the size of the concern in a MAC task order competition, whether the MAC is restricted or unrestricted, is determined at the date of the initial IDIQ offer, i.e., at the time of submission of a proposal for a MAC, at least insofar as the MAC competition did not require prices." Pl.'s Reply 6. The Seaport-NxG MAC did not require pricing at the time of the MAC. So plaintiff contends that the 2021 correction either moots this case or "muddles the issue with inconsistent regulatory language." *Id.* at 6, 16.

The SBA contends that plaintiff misreads the 2021 correction. According to the SBA, the correction only establishes the timing for determining the size of a business concern for IDIQ MACs when the initial MAC competition did not require price. Def.'s Reply 5. But to determine when size is determined for task orders under unrestricted MACs, "a business must still look to the 2020 Regulations' language." *Id.* The SBA thus argues that there is no conflicting language in the statute and the case is not moot. *Id.* at 5–6.

The parties' cross-motions for summary judgment are ripe for review.

## II.  LEGAL STANDARDS

### A. Summary Judgment

When a court decides motions for summary judgment in a suit "seeking review of an agency's actions, the standard under Fed. R. Civ. P. 56(a) does not apply." *Beyond Nuclear v. Dep't of Energy*, 233 F. Supp. 3d 40, 47 (D.D.C. 2017). Instead, the court must decide as a matter of law "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013). In these types of APA cases, summary judgment is favored. *Zemeka v. Holder*, 963 F. Supp. 2d 22, 24 (D.D.C. 2013).

**B. Mootness**

Article III of the United States Constitution limits federal courts' subject-matter jurisdiction to live "cases" and "controversies," U.S. Const., Art. III, § 2, and thus prevents federal courts from issuing "advisory opinions" on abstract questions of law, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). A litigant invoking Article III jurisdiction "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *United States v. Juvenile Male*, 564 U.S. 932, 938 (2011) (per curiam) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). But "[e]ven where litigation poses a live controversy when filed," a federal court must "refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011). A plaintiff's concrete and redressable injury-in-fact must persist throughout the life of the lawsuit; if the injury vanishes, so too does jurisdiction. *Spencer*, 523 U.S. at 7.

### III. ANALYSIS

The Court will **DENY WITHOUT PREJUDICE** the parties' cross-motions for summary judgment. In plaintiff's telling, the 2020 regulations do not apply to Seaport-NxG task orders because of the 2021 correction. *See* Pl.'s Reply 17. Stated differently, plaintiff argues that its concrete interest in this case no longer exists. This case comes before the Court in an unusual posture; *plaintiff* argues that the case is moot, the SBA argues that it is not. But mootness goes to the Court's subject matter jurisdiction and is a threshold determination that the Court must reach before addressing the parties' other arguments. Because this case might be moot, neither party has established that they are entitled to judgment as a matter of law.

Whether this case is moot turns on the meaning of the 2021 correction. The SBA contends that while the 2021 correction provides the standard for determining business size for IDIQ MACs

6

that do not include price, the relevant standard for determining size at the task-order stage comes from the preceding provisions in the 2020 Regulations. *See* Def.'s Reply at 5–6. The Court is not persuaded.

The SBA's interpretation has no basis in the regulatory text and structure. *See Huashan Zhang v. U.S. Citizenship & Immigr. Servs.*, 978 F.3d 1314, 1322 (D.C. Cir. 2020) ("[W]e cannot disregard the plain meaning of a regulation based on policy considerations."). The 2020 Regulations do not apply to the MACs identified in the 2021 correction—i.e., IDIQ MACs that do not include price. Instead, the 2020 Regulations apply only to unrestricted MACs that *include price*. *See* 13 C.F.R. § 121.404(a)(1)(i), (a)(1)(ii). This follows from the "'scope-of-subparts' canon, pursuant to which, at least as a general proposition, '[m]aterial within an indented subpart relates only to that subpart.'" *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1260 (11th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 156 (2012)). After identifying different types of MACs at issue, the 2020 Regulations restate the rule that a business must recertify its size status for task orders under unrestricted MACs. *See* 13 C.F.R. § 121.404(a)(1)(i)(A), (a)(1)(ii)(B). These rule statements' placement within their respective subsections indicate that they "go[] with, relate[] to, and [are] limited by the other sentences in that subsection"—like the language "which includes price." *Callahan.*, 939 F.3d at 1260. But the 2021 correction contains no similar task order guidance for IDIQ MACs that do *not* include price. *See* 13 C.F.R. § 121.404(a)(1)(iv). Stated simply, the text of the 2020 Regulations does not naturally apply to IDIQ MACs that do not include price.

So are businesses free to avoid recertifying their size status for subsequent task orders placed against IDIQ MACs that do not include price? Maybe. The 2021 correction contains no recertification requirement. But nor does it state that businesses shall be treated as small for all

7

task orders placed against the MAC. Plaintiff suggests that its small-business treatment for task orders persists if the challenged 2020 Regulations—that is, 13 C.F.R. 121.404(a)(1)(i)(A) and (a)(1)(ii)(B)—do not apply. But in other contexts, task orders are treated as separate or new contracts. *See, e.g., Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 174 (2016). Should the Court look elsewhere to determine whether recertification is required? The parties have not briefed a default rule in the absence of a regulation addressing this issue. The Court will not speculate without additional briefing.

To summarize, the Court rejects the SBA's interpretation of the regulation. This case may be moot if plaintiff is not required to recertify its size status because its IDIQ MAC did not include price. If this case is moot, presumably plaintiff will dismiss this case because its interests are no longer threatened by the SBA's 2020 Regulations. And plaintiff does not argue that the SBA will apply the 2020 Regulations despite the 2021 correction—that theory of harm is different from the theory reflected in the summary judgment briefing and the complaint. In light of the current procedural posture, neither party has demonstrated their entitlement to summary judgment. But for now, the Court will refrain from dismissing this case.

### IV. CONCLUSION

Based on the foregoing, the Court **DENIES WITHOUT PREJUDICE** the parties' cross-motions [13], [17], for summary judgment. Within thirty (30) days of this order, the parties shall submit a joint status report detailing a proposed schedule for this litigation.

**IT IS SO ORDERED.**

Date: 3/31/22

Royce C. Lamberth
United States District Judge